Good morning, your honors. May it please the court. My name is Elaine Siegel and I represent the plaintiff appellate, Sergeant Brad Sandefur. This is an employment discrimination claim for damages and other relief under the Americans with Disabilities Act. I shall focus on this. There's also a claim for due process violations pursuant to 42 U.S.C. section 1983. As I said, I will focus on the ADA claim and I would submit that the section 1983 claim turns, the outcome of that turns on the results in the ADA claim. This case began on July 6th of 2015. A client was driving into the parking lot of the police academy where he was about to begin a training program. There was a handicapped placard hanging from his mirror that had remained there after family outing the night before. There was a vehicle inspection by investigator Jeff Lang who spotted the handicapped placard and in a provocative and incendiary language of which the court is familiar, he stated, can you believe this? Now they're sending handicapped expletives to the academy. In the heated context of that environment where Mr. Lang was shouting and he was also accusing Mr. Sandefur of illegality, there was a conversation that ensued and my client was accused of lying. He had a handicapped placard, he had a back condition and a congenital knee condition, both of which flared intermittently and impairing his mobility, severely impairing his mobility during those flares. They weren't continuous conditions, they were intermittent. He had excruciating pain during those circumstances. However, he always managed to work through the pain and he had never asked for accommodations. He did not ask for accommodations at the police academy and he presented a statement from his physician that he was able to, that he was fit to perform the duties of that training program. Now that tense conversation in the parking lot ripened into a full-blown investigation as to whether he was truthful. And not only were they accusing him of lying in the parking lot, but they also claimed that he had illegally obtained his handicapped placard. And one of the first things that they did, after they had been advised by the HR chief that if he was not seeking accommodations, there was no employment issue, they immediately went to the Illinois Secretary of State to try to get an investigation done into the handicapped placard. The Illinois Secretary of State did so and spoke with the physician for my client and contacted the physician who confirmed the handicapped placard and that it was properly issued. And that was the end of it. Was that the same doctor who cleared him to join the police academy? Yes. Yes, it was. And it was... I'm struggling with this one, Ms. Siegel. In 2015, did the plaintiff have an impairment that substantially impaired the major life activity of walking? Yes, he did. It was an intermittent condition and when it was flaring, he was unable to walk. And if that's the case, how on earth does he qualify as a police officer who, as near as I can tell, has to be able to run one and a half miles in at least no longer than 16 minutes and 21 seconds under the power test for Illinois law enforcement? He had taken, as I recall the record, he had taken that test on repeated occasions. He'd always been able to perform that and he continued to do his work even at times when he was suffering extreme pain. And is it correct that under his version, he had been using the placard several times a week at work? Yes, that's correct. That's what he needed or not. Well, when he when he arrived for work in the morning, he didn't know whether or not he would need it in the evening. And so therefore, he availed himself of the parking of the parking place in case his condition were to flare. So is it your position, Ms. Siegel, that the defense was legally prohibited from inquiring into this apparent tension between physical qualifications as a police officer and using a handicapped placard? Well, the fact whether or not he was a qualified person with a disability does not affect the liability of the police department for pursuing its inquiry where they were in violation of the Americans with Disabilities Act. You do not have to be a qualified person with a disability in order to be exempt from the kinds of inquiries and interrogations that he was subjected to. So what inquiry would have been permissible? They could have done lawful inquiries. They could have requested an independent medical examination or they could have conferred with his physician. This is much like the Baltimore case where the plaintiff had a had a problem with the particular assignment that he was made. They terminated him immediately and they failed to contact his physician. There is an obligation on the employer where there is confusion about the nature of the alleged impairment or the needs for accommodations or whether there's a need for accommodation. There has to be competent medical evidence and it's incumbent upon the employer to seek out and obtain that information. Is a police employer permitted to test the integrity of its applicants? Absolutely, but to do that they need to have competent medical evidence where the issue is whether or not the employee is telling the truth about a medical condition. Or do they just need to know whether he can keep his story straight at a bare minimum? Well, Your Honor, in the course of the investigation that occurred here, one of the one of the major findings of the of the panel was that the plaintiff was dishonest because he said he thought that the placard should have been issued for his back condition rather than his knee condition. And in that situation he had actually contacted his physician to determine whether the placard were issued on the correct grounds. The physician assured him that it was properly issued under his knee condition as opposed to his back condition. So having double checked, having confirmed with his physician, he went ahead and submitted the placard application. They found that the defendants found that he had been duplicitous and that he had knowingly submitted a fraudulent application. And that was a major determination that resulted in his expulsion from the academy. Ms. Siegel, you spend a lot of time in your briefs arguing that there was an unlawful medical inquiry here under the ADA, but it doesn't appear you've raised that in the district court. Why haven't you waived that argument? Well, Your Honor, in the district court that was spelled out in the complaint. Well, there was one paragraph in the complaint, but in response to the motion to dismiss, which is where that issue was litigated, I looked through your briefs and I don't even see a mention of a medical examination, much less the citation to the appropriate ADA. Why haven't you waived that argument? Well, what was made in the district court was an argument that was based on the McDonnell-Douglas burden-shifting paradigm, and there were a variety of considerations that were brought to the intention of the court, but that should not foreclose in the McDonnell-Douglas. But you're raising that, I think you've just admitted that you're raising the medical inquiry for the first time on appeal. Why haven't you waived it given that? Well, there is substantial evidence in the record supporting the allegations in the complaint, as in the Cluffer case, the allegations in the complaint that there was... But Ms. Siegel, it doesn't matter what's in the complaint at the summary judgment stage. What really matters is what claims were submitted to the court on summary judgment. Was a discrimination claim litigated, but there was not an unlawful inquiry. Is there one able to your effort to make such a claim on appeal? Well, Your Honor, I would submit, and I say I'm running out of time here, but I would submit that the party properly brought this up on appeal because it is supplemental evidence of a direct violation of the ADA that further supports the argument that was made in the district court under the McDonnell-Douglas burden shifting analysis. I see my time is up. Thank you. Mr. Morris. Good morning, Your Honor. May it please the court. I'm Assistant States Attorney Patrick Morris and I represent the defendant appellee in this case, Cook County Sheriff's Office. Just to get right to the heart of the matter, uh, Counsel for Sandifer spends a great deal of time talking about Inspector Lange's statements that he was made to Mr. Sandifer on the first day of the training academy, but what she leaves out is that investigator Lange was just an associate instructor and had absolutely nothing to do with the ensuing investigation. What she also leaves out is the statements, the conversation between Lange and Mr. Sandifer started when Mr. Sandifer said that the handicap placard was his wife's or it was used for his wife, something along that lines, which obviously gave the impression that the handicap placard was not his. He then immediately contradicted himself when Lange asked him why it was displayed and said that, well, actually he can use the handicap placard too. After that conversation with Lange, Sandifer then met with outside of the presence of Lange and said again, the handicap placard was for his wife's. After that conversation, he met a third time with Sergeant Kamek and Lieutenant Kamer outside, again, the presence of investigator Lange and said again that the handicap placard was for his wife, but that he could also use it. And that in fact he was disabled. It was only at that point that to determine whether or not he had any special accommodations on file. And Lieutenant Kamer was very specific in saying I had no interest in what his disability was. I just wanted to know whether he had any accommodations. Now, after that conversation, it was determined by Sandifer himself that he did not require any accommodations. Lieutenant Kamer then submitted a memorandum up through his chain, which noted the contradictions that were made by Sandifer and which are he had a placard and whether or not he needed one. So that was the basis of the investigation. And at no point was there any investigation into, nor is it important whether Mr. Sandifer was in fact disabled. That was not the concern of the Sheriff's office. The concern was why he was making these shifting statements, which is why they pursued an investigation. This investigation was done initially by a Sergeant Goldsmith who had subpoenaed his handicap application. The handicap application indicated that he was permanently disabled and that he could not work at any distance without the assistance of some sort of walking device. After receiving these, they decided to open a little bit more of a broader range of investigation and they had Sandifer come in and talk with him. It was at that point that he disputed that he was permanently disabled, that the handicap placard was necessary for his knee and for his back. And made several other conflicting statements regarding his prior statements to Lange and Kammer and Kamek. At this point, there is a mountain of conflicted statements and that was the basis for his removal from the academy, nothing to do with his disability. And that's clear from the memorandum recommending his removal from the academy. That was authored by Sergeant Sullivan, approved by Investigator Statura, and ultimately approved by the executive team in the Sheriff's office. Nothing in the memorandum references whether or not they think he's capable of performing his job duties, whether or not he actually has a knee condition or a back condition. It's focused solely on the fact that he was dishonest both in his statements to investigators and potentially in his application for the handicap placard. In addition to that, he also admitted that he often used the handicap placard when he didn't have a medical reason to do so and did so at work. So there was a litany of false, deceitful, or dishonest statements by Mr. Sanford that necessitated his removal from the police academy. And this court has consistently held that Sheriff's police have a legitimate interest in ensuring that their officers have the requisite integrity and honesty in order to perform their job. They're public trust of the public and of their fellow employees. So it was a legitimate basis to remove him from his position. At the same time, there's no evidence that this decision was pretextual. There's no inconsistencies in their statements. There's no arbitrary actions done by the Sheriff's office. There is no discriminatory animus that is shown through the investigation. And without that any showing of any sort of inconsistency or dishonesty or deceit on the Sheriff's office, there is no reasonable juror that could conclude that he was terminated because of his disability and not because of his dishonesty. Now with respect to the direct violation that Sanford brings on appeal for the first time, opposing counsel had cited the Puffer case is pretty much on point with exactly what occurred in this case. In Puffer case, the plaintiff had argued presented evidence of intentional discrimination at the motion for class certification stage at the district court level. And while he had alleged disparate impact in his pleadings and had dedicated a single sentence to the disparate impact claim on his motion for class certification, the court found that that was insufficiently developed and therefore wavered. Thus, like the Puffer case here, plaintiff, although he alleged that there was discrimination on the basis of unlawful inquiry or examination within his first amendment complaint, he makes no reference to that allegation and presents no evidence that it was violated at the district court stage. Accordingly, that argument has been waived. And even if you were to entertain the there is no evidence in the record that shows the sheriff's office was concerned with the actual disability that Mr. Sandberg may or may not have, only with why his statements continue to contradict each other. There was no examination done by a doctor's office that was hired by the sheriff's office. There was no interview with his doctor to determine out the extent or severity of his disability, which is what is the express language in section 121.12d of the ADA. There was nothing other than that they focused on. And with respect to the obtaining of his medical records, which Sanford alleges violated 121.d3b of the ADA, those medical records were reviewed by a single investigator at the sheriff's office. And he ultimately concluded that they provided no information pertaining to any of his alleged disabilities. Effectively, they had no bearing on the investigation whatsoever. Similarly, with his conversations with the Illinois Secretary of State Police, it was solely to obtain the information from his application, and no information was disclosed to the Secretary of Police. In order for Sandford to prevail under either one of those sections of the ADA, he has to show that some harm arose from them, that there was some harm in some medical inquiry into his medical condition, or some harm from disclosing his information to a but Sandford has failed to show and make any connection between his medical records, the review of his medical records, or the review of his handicap placard, or his medical condition in his removal from the academy. Rather, the evidence overwhelmingly shows that it was at the end his dishonesty. And I think it's important to note in the dishonesty that it occurred in a statement to Lange, in a separate statement to Kamek, in a separate statement to Kammer, in an investigation with Smith and Statura, and then in a subsequent memorandum he submitted after his interview with those two. So this is not a single instance in which the Sheriff's Office twisted a potential inconsistency and use it as the basis for his dismissal. They give him ample opportunity to just explain himself as to why there are these inconsistent statements, and he just continued to double down and confuse the issue. And because of that, and the Sheriff's Police is an elite unit of the Sheriff's Office, he did not have the requisite integrity and honesty to proceed, and therefore he was removed back to his positions with the Cook County Corrections Office. My last point is counsel argues that the 1983 case turns on the ADA claim. While that's true, if Sandford had in fact proven a case under the ADA, even if he did not, or if he he still fails to show that there was a due process violation. He, Sandford points to not a single custom policy or practice of the Sheriff's Office that resulted in his removal. In any event, he can't argue that he lost a liberty interest when he's currently still serving as a Corrections Officer with the Sheriffs. And even if he were to claim that... Mr. Morris, is it correct that when the Sheriff's Office puts somebody on a so-called Brady list, there is an opportunity for a hearing to contest them? That's correct. It's correct, Your Honor. And Sandford in this case had an opportunity to present his argument with respect to the Brady violation. And I'm almost out of time, and I can just wrap it up this last point. Even if he were to, if you'll allow me the extra time, briefly. You can wrap up in a sentence or two. Thank you, Judge. Even if he used within the Sheriff's Office, and although it didn't allow him to get a position within the Sheriff's Police of the Sheriff's Office, it did not prevent him from getting any other position in any other law enforcement agency as a District Court file. Thank you for your time. Thank you. Judge Siegel, your time had expired, but you can have a minute if you have something brief to say in rebuttal. I do. Thank you, Your Honor. I would submit to the court that you can't tell whether or not Mr. Sandford was truthful about his medical condition without competent medical evidence. They determined that he was not truthful based on his subjective understanding of his medical condition, his difficulty in trying to explain that, and even with his repeated objections that he was not a physician, that he could not explain his back condition. He could not explain his knee condition or why it was that one condition was selected by his physician over the other. Even though he objected repeatedly about the need for competent medical evidence, they failed to do that, and by doing so, they put him in a position where necessarily he was not going to be able to give compelling evidence. And I thank you, Your Honors, for hearing me out today. All right. Our thanks to both counsel. The case is taken under advisement.